IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HARRISON DIVISION

BILLY D. BRAMBLETT                                                              PLAINTIFF

    v.                            CIVIL NO. 3:16-CV-3030

NANCY A. BERRYHILL, [1] Acting Commissioner,
Social Security Administration                                                  DEFENDANT

# MEMORANDUM OPINION

Plaintiff, Billy D. Bramblett, brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of the Social Security Administration (Commissioner) denying his claim for a period of disability and disability insurance benefits under the provisions of Title II of the Social Security Act (Act).  In this judicial review, the Court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision.  See 42 U.S.C. § 405(g).

**I.   Procedural Background:**

Plaintiff protectively filed his current application for DIB on February 20, 2013, alleging an inability to work since July 15, 2006, due to problems with his left arm, bi-polar disorder, and back problems.  (Doc. 10, pp. 87, 103). For DIB purposes, Plaintiff maintained insured status through March 31, 2009.  (Doc. 10, pp. 87, 103).  An administrative hearing was

---

[1] Nancy A. Berryhill, has been appointed to serve as acting Commissioner of Social Security, and is substituted as Defendant, pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure.

1

held on July 23, 2014, at which Plaintiff appeared with counsel and testified. (Doc. 10, pp. 42-68).

By written decision dated October 24, 2014, the ALJ found that during the relevant time period, Plaintiff had a severe impairments of residual pain after compound fracture of the left arm status post open reduction and internal fixation, and anxiety and depression.  (Doc. 10, p. 16).  However, after reviewing all of the evidence presented, the ALJ determined that Plaintiff's impairments did not meet or equal the level of severity of any impairment listed in the Listing of Impairments found in Appendix I, Subpart P, Regulation No. 4.  (Doc. 10, pp. 16-18).  The ALJ found that Plaintiff retained the residual functional capacity (RFC) to perform light work as defined in 20 CFR § 404.1567(b), except that Plaintiff could perform simple tasks with simple instructions with incidental interpersonal contact. (Doc. 10. pp. 18-22).  With the help of a vocational expert (VE), the ALJ determined that Plaintiff was capable of performing the requirements of representative occupations such as a cashier II, a price marker, and a poultry plant worker.  (Doc. 10, pp. 22-23).

Plaintiff then requested a review of the hearing decision by the Appeals Council, which denied that request on February 8, 2016.  (Doc. 10, pp. 5-7).  Subsequently, Plaintiff filed this action.  (Doc. 1).  This case is before the undersigned pursuant to the consent of the parties.  (Doc. 7).  Both parties have filed appeal briefs, and the case is now ready for decision.  (Docs. 11, 12).

The Court has reviewed the entire transcript.  The complete set of facts and arguments are presented in the parties' briefs, and are repeated here only to the extent necessary.

2

**II.     Applicable Law:**

This Court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. Ramirez v. Barnhart, 292 F.3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. The ALJ's decision must be affirmed if the record contains substantial evidence to support it. Edwards v. Barnhart, 314 F.3d 964, 966 (8th Cir. 2003). As long as there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the Court would have decided the case differently. Haley v. Massanari, 258 F.3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. Young v. Apfel, 221 F.3d 1065, 1068 (8th Cir. 2000).

It is well-established that a claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity. Pearsall v. Massanari, 274 F.3d 1211, 1217 (8th Cir. 2001); see also 42 U.S.C. §§ 423(d)(1)(A), 1382c (a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). A Plaintiff must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require her to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing his claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given his age, education, and experience. See 20 C.F.R. § 404.1520(a)(4). Only if the final stage is reached does the fact finder consider the Plaintiff's age, education, and work experience in light of his residual functional capacity. See McCoy v. Schweiker, 683 F.2d 1138, 1141-42 (8th Cir. 1982), abrogated on other grounds by Higgins v. Apfel, 222 F.3d 504, 505 (8th Cir. 2000); 20 C.F.R. § 404.1520(a)(4)(v).

### III. Discussion:

On appeal, Plaintiff asserts that the ALJ's RFC determination is unsupported by substantial evidence as it failed to account for the Plaintiff's mental impairments in accordance with the method prescribed by law. (Doc. 11, pp. 5-11).

### A. Insured Status and Relevant Time Period:

In order to have insured status under the Act, an individual is required to have twenty quarters of coverage in each forty-quarter period ending with the first quarter of disability. 42 U.S.C. § 416(i)(3)(B). Plaintiff last met this requirement on March 31, 2009. Regarding Plaintiff's application for DIB, the overreaching issue in this case is whether Plaintiff was disabled during the relevant time period of July 15, 2006, his amended alleged onset date of disability, through March 31, 2009, the last date he was in insured status under Title II of the Act.

In order for Plaintiff to qualify for DIB he must prove that, on or before the expiration of his insured status he was unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which is expected to last for at least twelve months or result in death. Basinger v. Heckler, 725 F.2d 1166, 1168 (8th Cir. 1984). Records and medical opinions from outside the insured period can only be used in "helping to elucidate a medical condition during the time for which benefits might be rewarded." Cox v. Barnhart, 471 F.3d 902, 907 (8th Cir. 2006) (holding that the parties must focus their attention on claimant's condition at the time he last met insured status requirements).

### B.     Subjective Complaints and Symptom Analysis:

The ALJ was required to consider all the evidence relating to Plaintiff's subjective complaints including evidence presented by third parties that relates to: (1) Plaintiff's daily activities; (2) the duration, frequency, and intensity of his pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness, and side effects of his medication; and (5) functional restrictions. See Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984). While an ALJ may not discount a claimant's subjective complaints solely because the medical evidence fails to support them, an ALJ may discount those complaints where inconsistencies appear in the record as a whole. Id. As the Eighth Circuit has observed, "Our touchstone is that [claimant's] credibility is primarily a matter for the ALJ to decide." Edwards v. Barnhart, 314 F.3d 946, 966 (8th Cir. 2003).

After reviewing the administrative record, it is clear that the ALJ properly considered and evaluated Plaintiff's subjective complaints, including the Polaski factors. The ALJ discussed Plaintiff's activities of daily living; the objective medical evidence, particularly in the form of x-rays that failed to support Plaintiff's severe allegations of pain; the mostly

5

conservative treatment Plaintiff received for his physical impairment; and the sporadic mental health treatment and lack of hospitalizations Plaintiff received for his mental impairments. (Doc. 10, pp. 18-22).

The ALJ also considered Plaintiff's failure to keep appointments and follow up with healthcare providers. (Doc. 10, pp. 18-22). The ALJ may discount subjective complaints based on a failure to pursue regular medical treatment. See Edwards v. Barnhart, 314 F.3d 964, 967 (8th Cir. 2003). Furthermore, the ALJ considered that although Plaintiff suffered from some degree of pain, his treating physicians and emergency room physicians opined that Plaintiff was engaging in drug-seeking behavior. (Doc. 10, pp. 18-22). See Anderson v. Shalala, 51 F.3d 777, 780 (8th Cir. 1995) (discrediting Plaintiff's allegations of pain where she exhibited drug-seeking behavior).

Although the record indicates that Plaintiff was homeless during a portion of the relevant time period, the record is void of any indication that Plaintiff had been denied treatment due to the lack of funds. Murphy v. Sullivan, 953 F.3d 383, 386-87 (8th Cir. 1992) (holding that lack of evidence that plaintiff sought low-cost medical treatment from her doctor, clinics, or hospitals does not support plaintiff's contention of financial hardship). Further, the Court notes that Plaintiff's medical records indicated that, despite being homeless during the relevant time period, Plaintiff was able to support his habit of smoking cigarettes. (Doc. 10, pp. 304, 324, 369, 374, 391, 397, 413, 532-533, 541, 551).

While it is clear that Plaintiff suffers with some degree of limitation, he has not established that he was unable to engage in any gainful activity during the relevant time period. Accordingly, the Court concludes that substantial evidence supports the ALJ's conclusion that Plaintiff's subjective complaints were not totally credible.

6

**D.     The ALJ's RFC Determination and Medical Opinions:**

RFC is the most a person can do despite that person's limitations. 20 C.F.R. § 404.1545(a)(1). It is assessed using all relevant evidence in the record. Id. This includes medical records, observations of treating physicians and others, and the claimant's own descriptions of his limitations. Guilliams v. Barnhart, 393 F.3d 798, 801 (8th Cir. 2005); Eichelberger v. Barnhart, 390 F.3d 584, 591 (8th Cir. 2004). Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. § 404.1545(a)(3). The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." Lauer v. Apfel, 245 F.3d 700, 704 (8th Cir. 2001). Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace. Lewis v. Barnhart, 353 F.3d 642, 646 (8th Cir. 2003). "[T]he ALJ is [also] required to set forth specifically a claimant's limitations and to determine how those limitations affect his RFC." Id.

Plaintiff argues that the ALJ's RFC determination does not take into account Plaintiff's mental impairments. (Doc. 11, pp. 5-11). In making the RFC finding, the ALJ considered Plaintiff's testimony that he was unable to keep a job due to his depression. (Doc. 10, p. 57). Plaintiff also stated in a Function Report dated March 11, 2013, that he had trouble getting along with others and that he had been fired for such behavior. (Doc. 10, pp. 252-253). The ALJ also considered the relevant medical records documenting Plaintiff's reports of suicidal and homicidal ideation. (Doc. 10, pp. 299, 317, 323, 337, 343, 361, 386).

The ALJ considered mental health clinic notes during the relevant time period, including notes from a December 2006 mental health assessment, where Plaintiff reported that he was currently in jail for statutory rape; that he was not currently depressed, but that he had

7

suffered from a mental breakdown; and that he was not having suicidal thoughts. (Doc. 10, pp. 328-331). A Medical Progress note on that same date indicated that Plaintiff had issues with anger, antisocial behavior, and anxiety attacks, but that while he had previously been on medication for those issues, he did not currently believe in medication and refused medication on that date. (Doc. 10, pp. 312-313).

In November of 2007, almost one year later, clinic notes reveal that Plaintiff was brought by police to the crisis assessment because he reported having suicidal ideations. The mental status exam showed that Plaintiff had a disheveled appearance, loud speech, signs of anger, a blunt affect, anxious behavior, depression, a fair mood, poor recent memory, and poor remote memory. However, Plaintiff reported he was not taking his medication and was not receiving any mental health treatment. (Doc. 10, pp. 317-320).

In February of 2008, a primary care note revealed that Plaintiff presented with multiple complaints, including that of depression. (Doc. 10, p. 334). In March of 2008, Plaintiff presented for a psychiatry consultation where he denied suicidal feelings, but stated he had homicidal ideation toward officials in Texas who had removed his children from his care. (Doc. 10, pp. 340-343). Also at that consultation, records showed that Plaintiff did not meet the criteria for involuntary admission, and he was unwilling to submit voluntarily; he also refused any psychiatric medications. (Doc. 10, p. 342).

Plaintiff did not return for a crisis assessment until several months later in August of 2008, when he reported symptoms of depression, anxiety, and agitation. (Doc. 10, p. 323-326). Also on that day, Plaintiff underwent a psychiatric assessment, where Dr. William Rafuls diagnosed him with adjustment disorder and assessed him with a GAF score of 50. (Doc. 10,

p. 299-306).  Dr. Rafuls noted that Plaintiff had no suicidal thoughts; opined that Plaintiff's progress was fair, and that he did not meet the criteria for admission to a facility; and suggested that a follow up was available at the VA clinic.  (Doc. 10, pp. 306-307).

On August 18, 2008, Plaintiff presented at the VA for a psychiatry consultation with Dr. Lanny M. Leftwich.  (Doc. 10, p. 338). Dr. Leftwich noted that he had only seen Plaintiff once since March of 2008 and that Plaintiff had repeatedly failed to show up for therapy. (Doc. 10, p. 338).  Dr. Leftwich's notes also reflect that Plaintiff gave conflicting reports as to problems he was experiencing with sleep.  (Doc. 10, p. 338).   In September of 2008, Dr. Leftwich's clinic notes revealed that Plaintiff appeared to be seeking narcotics from his primary care physician, as well as from Dr. Leftwich. (Doc. 10, p. 337).  At that visit, Plaintiff was also unwilling to voluntarily admit himself to a facility for services.  (Doc. 10, p. 337).

In October of 2008, Plaintiff complained to Dr. Leftwich that he was experiencing side effects of his medications.  Dr. Leftwich's report showed that Plaintiff had a history of drug seeking behavior and that while he reported to be experiencing chronic pain, he did not appear to be in pain during the clinic visit.  (Doc. 10, p. 361). Dr. Leftwich also noted Plaintiff's report that he had been suicidal for twenty years, but did not have a plan to act on those ideations. (Doc. 10, p. 361).  Dr. Leftwich diagnosed Plaintiff with mood disorder and personality disorder and increased his medication. (Doc. 10, p. 362).

Plaintiff did not seek mental health treatment again until seven months later in May of 2009, during a visit to the emergency room for a broken tooth.  (Doc. 10, p. 545).  There he sought medication for a broken tooth and for anxiety and depression.  (Doc. 10, p. 545).  A Psychiatry Note, by Dr. Carl Jensen, Staff Psychiatrist at the Veteran's Seattle Health Center,

revealed that Plaintiff had applied for a job on a fishing boat and was motivated to work. (Doc. 10, p. 546). Dr. Jensen's notes also indicated that Plaintiff appeared well-groomed, calm, and coherent without psychosis, and while his mood was somewhat depressed, he was relaxed and not agitated. Plaintiff also denied any suicidal or homicidal ideations. (Doc. 10. pp. 545-546). Dr. Carl Jensen declined to prescribe Xanax, as Plaintiff requested, unless Plaintiff was undergoing mental health treatment, and his clinic notes indicated that Plaintiff was not motivated to engage in focused therapy. (Doc. 10, p. 547).

In June of 2009, when Plaintiff returned to the Seattle Health Center, he was seeking medication for his anxiety. (Doc. 10, p. 541). On that day, Staff Psychiatrist, Dr. Bradford L. Felker, diagnosed Plaintiff with dysthymia, adjustment disorder with anxious features, antisocial personality disorder, and chronic pain. (Doc. 10, p. 539). Plaintiff reported no suicidal ideations and was not interested in further mental health treatment. (Doc. 10, p. 539).

In sum, throughout the relevant time period, Plaintiff's medical records revealed that he repeatedly refused medications for his mental health conditions; he reported on more than one occasion that he was non-compliant with his mental health medication and that he was not receiving mental health treatment; he repeatedly failed to show up for doctor appointments; he refused voluntary admission to a mental health facility when he did not meet the criteria for involuntary admission; and on three occasions, he left the emergency room while seeking treatment against medical advice. (Doc. 10, pp. 310, 311, 313, 320, 326, 340, 382, 415, 423, 503, 504, 527, 528, 538, 555). See Ostronski v. Chater, 94 F.3d 413, 419 (8th Cir.1996) (complaints of disabling pain and functional limitations are inconsistent with the failure to take prescription pain medication or to seek regular medical treatment for symptoms); See Novotny v. Chater, 72 F.3d 669, 671 (8th Cir. 1995) (per curiam) (failure to seek treatment inconsistent

with allegations of pain); Rautio v. Bowen, 862 F.2d 176, 179 (8th Cir.1988) ("A failure to seek aggressive treatment is not suggestive of disabling back pain."); Brown v. Barnhart, 390 F.3d 535, 540-541 (8th Cir. 2004) (citations omitted) ("Failure to follow a prescribed course of remedial treatment without good reason is grounds for denying an application for benefits.").

Further, medical records also showed that on numerous occasions, Plaintiff sought additional prescriptions, claiming that his medications were "lost" or "stolen," and emergency room doctors as well as other physicians opined that he was exhibiting drug seeking behavior, declining to continue to issue additional prescriptions. (Doc. 10, pp. 505, 512, 513, 514, 518-519, 521, 522, 526, 541).  It is well-established in the Eighth Circuit that "drug-seeking" behavior may be used to discredit a claimant's subjective allegations of disabling pain. Anderson v. Shalala, 51 F.3d 777, 780 (8th Cir. 1995).

The ALJ also considered the medical opinions from treating and non-examining physicians, and set forth the reasons for the weight given to the opinions. Renstrom v. Astrue, 680 F.3d 1057, 1065 (8th Cir. 2012) ("It is the ALJ's function to resolve conflicts among the opinions of various treating and examining physicians") (citations omitted); Prosch v. Apfel, 201 F.3d 1010 at 1012 (the ALJ may reject the conclusions of any medical expert, whether hired by the claimant or the government, if they are inconsistent with the record as a whole).

After reviewing the entire transcript, the Court finds substantial evidence supporting the ALJ's RFC determination of light work with the limitation of only performing simple tasks with simple instructions with incidental interpersonal contact.

### E. Hypothetical Question to the Vocational Expert:

After thoroughly reviewing the hearing transcript along with the entire evidence of record, the Court finds that the hypothetical the ALJ posed to the vocational expert (VE) fully set forth the impairments which the ALJ accepted as true and which were supported by the record as a whole. Goff v. Barnhart, 421 F.3d 785, 794 (8th Cir. 2005). Accordingly, the Court finds that the VE's opinion constitutes substantial evidence supporting the ALJ's conclusion that Plaintiff's impairments did not preclude him from performing work as a cashier II, a price marker, and a poultry plant worker. Pickney v. Chater, 96 F.3d 294, 296 (8th Cir. 1996) (testimony from vocational expert based on properly phrased hypothetical question constitutes substantial evidence).

## IV. Conclusion:

Accordingly, having carefully reviewed the record, the undersigned finds substantial evidence supporting the ALJ's decision denying the Plaintiff benefits, and thus the decision should be affirmed. The undersigned further finds that the Plaintiff's Complaint should be dismissed with prejudice.

DATED this 24th day of July, 2017.

/s/ *Erin L. Wiedemann*
HON. ERIN L. WIEDEMANN
UNITED STATES MAGISTRATE JUDGE